Filed 6/23/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NANCY MICHELLE MENDOZA, | D078566 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. H22844) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Eugenia E. Eyherabide, Judge. Petition denied.

Elizabeth E. Comeau and Carl Fabian for Petitioner.

No appearance for Respondent.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam and Martin E. Doyle, Deputy District Attorneys, for Real Party in Interest.

# I.  INTRODUCTION

A superior court judge summarily denied a petition for writ of habeas corpus in which petitioner Nancy Michelle Mendoza[1] claimed she received ineffective assistance of counsel at her sentencing hearing.  The California Supreme Court later issued an order to show cause (OSC) returnable before the superior court on the same claim.  The case was then assigned to the same judge who previously had denied Mendoza's petition.  More than 40 days later, Mendoza filed a peremptory challenge to the judge under Code of Civil Procedure section 170.6.[2]  A different judge denied the challenge as untimely.

Mendoza seeks a writ of mandate directing the superior court to vacate its order denying her peremptory challenge and to disqualify the original judge.  Her petition presents an issue of first impression as to whether her peremptory challenge is subject to section 170.6(a)(2)'s 60-day deadline following a "reversal on appeal" and assignment to the original judge for "a new trial" (in which case Mendoza's challenge was timely); or section 170.6(a)(2)'s 10-day deadline for criminal cases assigned to a judge for all purposes (in which case Mendoza's challenge was untimely).

We reject Mendoza's contention that the 60-day deadline applies.  Even assuming the reversal on appeal condition is satisfied, the new trial condition is not.  Section 170.6 does not define the term "new trial," but the Supreme

---

[1]    At various times reflected in the record, petitioner was known as Nancy Michelle Mendoza Moreno.  However, because she instituted the current proceedings using the surname Mendoza, we will refer to her by that name.

[2]    Unspecified statutory references are to the Code of Civil Procedure.  We will refer to section 170.6, subdivisions (a)(1) and (a)(2) as "section 170.6(a)(1)" and "section 170.6(a)(2)," respectively.

2

Court has done so, finding that the definition differs significantly depending on whether a case is civil or criminal. (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253 (*Peracchi*).) Although a habeas corpus proceeding is "not entirely analogous to either category" (*In re Scott* (2003) 29 Cal.4th 783 (*Scott*)), we conclude the proceedings on Mendoza's petition are more analogous to a criminal case because she asserts quintessentially criminal law concepts (ineffective assistance of counsel and sentencing considerations) and seeks only a new sentencing hearing. Our Supreme Court has held that a resentencing hearing does not constitute a new trial for purposes of section 170.6. (*Peracchi*, at p. 1253.) Thus, because the proceedings on Mendoza's petition will not constitute a new trial, section 170.6's 60-day deadline does not apply.[3]

Instead, we conclude the 10-day all purpose assignment deadline applies. (See *Bontilao v. Superior Court* (2019) 37 Cal.App.5th 980, 998-1000 (*Bontilao*) [holding the 10-day deadline for all purpose assignments of criminal cases (rather than the 15-day deadline for civil cases) applies in habeas corpus proceedings]; *People v. Superior Court* (*Reagan*) (2020) 54 Cal.App.5th 766, 774, fn. 3 (*Reagan*) [following *Bontilao*].) Applying this deadline, the superior court properly denied Mendoza's challenge as untimely.

Accordingly, we deny Mendoza's petition for writ of mandate.

---

[3]     Because we conclude the new trial condition is not satisfied, we need not, and do not, decide whether the reversal on appeal condition is satisfied.

3

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Mendoza's Underlying Convictions and Sentence

In 2007, when she was 18, Mendoza participated in a kidnap-for-ransom scheme with a Mexican drug cartel. She was ultimately convicted in 2012 of one count of conspiracy to kidnap for ransom, and two counts of kidnapping for ransom. As to one of the kidnapping counts, the jury found true the enhancement allegation that the victim suffered bodily harm and was intentionally confined in a manner that exposed him to a substantial risk of death. As to all counts, the jury also found gang and firearm-use enhancement allegations to be true.

The trial court (Judge John S. Einhorn) sentenced Mendoza to (1) a mandatory LWOP term for the kidnapping count with the attendant bodily harm enhancement finding, plus 10 years for the firearm enhancement; (2) life with the possibility of parole, plus 10 years for the firearm enhancement on the other kidnapping count; and (3) a stayed (§ 654) term of life, plus 10 years, for the conspiracy conviction and attendant firearm enhancement.

Mendoza's defense counsel argued at the sentencing hearing that the LWOP sentence was cruel and unusual, but did not ask the court to exercise its discretion under Penal Code section 1385 to strike the bodily harm enhancement that resulted in Mendoza's mandatory LWOP sentence. (Pen. Code, § 209, subd. (a).)

### B. Direct Appeal

Mendoza appealed her convictions to our court, raising more than 25 contentions, including that her sentencing counsel (Elizabeth Comeau and Merle Schneidewind) rendered ineffective assistance by failing to request that the trial court exercise its discretion to strike the bodily harm

4

enhancement. (*People v. Moreno* (Cal. Ct. App., Jan. 27, 2016, No. D064526) 2016 WL 336314, at pp. *1, *46 (*Moreno*).)[4]  Comeau, who also represented Mendoza in the appeal, acknowledged she had no tactical reason for failing to make the request, which she maintained would have been granted. (*Id.* at p. *46.) Our court rejected Mendoza's claims. (*Id.* at pp. *47, *49.)

Mendoza petitioned the California Supreme Court for review. The Supreme Court denied the petition, but clarified the next day that the denial was "without prejudice to filing a petition for a writ of habeas corpus in the superior court alleging ineffective assistance of counsel at sentencing."

## C. **Habeas Corpus Proceeding**

### 1. **Superior Court**

Mendoza filed a petition for writ of habeas corpus in the superior court raising several issues, including that her sentencing counsel rendered ineffective assistance by failing to request that the trial court strike the bodily harm enhancement.[5]

The sentencing judge had since retired, so Mendoza's petition was assigned to Judge Kenneth So, who later issued a 54-page order denying Mendoza's petition on the ground she failed to state a prima facie case for relief. Regarding the sentencing issue, Judge So found Mendoza had not established the prejudice prong of her ineffective assistance claim because

---

[4]    We take judicial notice of our court's prior opinion in *Moreno*. (See Evid. Code, § 452, subd. (d).)

[5]    Our court's opinion in the direct appeal suggests it was attorney Comeau who failed to raise the issue at sentencing (see *Moreno*, *supra*, 2016 WL 336314, at p. *47), whereas Mendoza's habeas corpus petition gives the impression it was attorney Schneidewind. We need not resolve this factual discrepancy to address the legal issue before us.

"there is no reasonable probability that the court would have stricken the enhancement 'in the interest of justice.' "

### 2. Court of Appeal

Mendoza (represented by attorney Comeau) filed a habeas corpus petition in this court raising 17 issues, including the claim regarding ineffective assistance at sentencing. Our court summarily denied the petition.

### 3. California Supreme Court

Mendoza (again represented by attorney Comeau) filed a habeas corpus petition in the California Supreme Court asserting 17 grounds for relief, including the claim regarding ineffective assistance at sentencing. The court requested and received informal responses from the parties.

On November 24, 2020, the Supreme Court issued an order to "[t]he Secretary of the Department of Corrections and Rehabilitation . . . to show cause before the San Diego Superior Court . . . why [Mendoza] is not entitled to relief based on her claim that trial counsel rendered ineffective assistance at sentencing by failing to seek dismissal of the Penal Code section 209 enhancement for infliction of bodily harm under Penal Code section 1385." The court clerk also sent a letter to the superior court advising that the issuance of the OSC "requires the appointment of counsel, a hearing, and the disposition of the petitioner's claims on their merits."

### D. Peremptory Challenge

About two weeks later, on December 4, 2020, Judge So issued an order appointing the Office of Assigned Counsel (OAC) to represent Mendoza, and setting a briefing schedule on the OSC. The order stated that the "Court will not rule on the [OSC] until all briefing is complete . . . ." On December 8, the court served the order by mail on the parties, OAC, and attorney Comeau.

On December 28, 2020, OAC assigned Mendoza's case to attorney Comeau.[6]

On January 25, 2021, attorney Comeau filed on Mendoza's behalf a peremptory challenge of Judge So under section 170.6. Comeau maintained the challenge was subject to the 60-day deadline set forth in section 170.6 (a)(2), which applies "following reversal on appeal of a trial court's decision . . . if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter." She argued the Supreme Court's OSC was a reversal on appeal and a remand for a new trial because it "constituted an order for the reexamination of the merits of Judge So's earlier order denying [Mendoza]'s habeas corpus petition."

On February 2, 2021, Judge Eugenia Eyherabide denied Mendoza's peremptory challenge as untimely. Judge Eyherabide found the 60-day deadline inapplicable, reasoning the Supreme Court's OSC did not constitute a "reversal on appeal" because Mendoza's habeas corpus petition to the Supreme Court was not an appeal—it was a "separate and distinct" legal proceeding that invoked the Supreme Court's original jurisdiction. Judge Eyherabide did not reach whether the proceeding before Judge So would constitute "a new trial" within the meaning of section 170.6 (a)(2).

Instead, Judge Eyherabide concluded Mendoza's peremptory challenge was subject to the 10-day deadline applicable to criminal proceedings assigned to a judge for all purposes. (§ 170.6(a)(2) ["If directed to the trial of

6    In the petition for writ of mandate, Comeau represented under penalty of perjury that OAC "assigned" the case to her on December 28, 2020. In her supporting memorandum, however, she asserted OAC merely "invited" her to represent Mendoza on that date. We accept Comeau's verified assertion that OAC *assigned* the case to her on December 28, 2020.

a criminal cause that has been assigned to a judge for all purposes, the motion shall be made . . . within 10 days . . . ."].) Mendoza's challenge was untimely under this standard.

### E.  **This Petition for Writ of Mandate**

On Mendoza's behalf, attorney Comeau filed the instant petition for writ of mandate seeking to vacate the superior court's order denying her peremptory challenge, and to disqualify Judge So.  (See *Daniel V. v. Superior Court* (2006) 139 Cal.App.4th 28, 39 ["An order denying a peremptory challenge is not an appealable order and may be reviewed only by way of a petition for writ of mandate."].)  We requested and received informal responses from the People and Mendoza.  We then issued an OSC, in response to which the People filed a formal return, and Mendoza filed a reply.

### III.  DISCUSSION

### A.  **Overview of Relevant Law**

### 1.  **Section 170.6**

Section 170.6(a)(1) provides that a "judge . . . shall not try a civil or criminal action or special proceeding of any kind or character nor hear any matter therein that involves a contested issue of law or fact when it is established . . . that the judge . . . is prejudiced against a party or attorney . . . appearing in the action or proceeding."  Section 170.6 "permits a party to obtain the disqualification of a judge for prejudice, based solely upon a sworn statement, without being required to establish prejudice as a matter of fact to the satisfaction of the court."  (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1032 (*Home Ins.*).)  "When a litigant has met the requirements of section 170.6, disqualification of the judge is mandatory, without any requirement of proof of facts showing that the judge is *actually* prejudiced."  (*Maas v. Superior Court* (2016) 1 Cal.5th 962, 972 (*Maas*).)  "Permitting a

8

party's belief that the judge is prejudiced to justify disqualification was intended to 'preserve public confidence in the impartiality of the courts.' " (*Id.* at p. 973.)

Because "the Legislature was well aware of the potential that [section 170.6's] provisions 'may be abused by parties seeking to delay trial or to obtain a favorable judge[,]' . . . the statute restricts both the number and the timing of a peremptory challenge against a judge." (*Maas*, *supra*, 1 Cal.5th at p. 973.) As for the number, as a general rule, each party (or, when there is more than one party per "side," then each side) may bring only one motion to disqualify per action or special proceeding. (§ 170.6, subd. (a)(4); see *Home Ins.*, *supra*, 34 Cal.4th at pp. 1032-1033.)

Regarding timing, "[a]s a general rule, a motion for disqualification under section 170.6 is allowed any time before the commencement of the trial or hearing." (*Maas*, *supra*, 1 Cal.5th at p. 978.) There are several circumstances, however, when shorter deadlines apply. (See *People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1171 (*Lavi*).) Two of these alternate deadlines are at issue here: the 10-day all purpose assignment deadline (which Judge Eyherabide found applies), and the 60-day reversal on appeal deadline (which Mendoza contends applies).[7]

" 'Under the all-purpose assignment rule, a [S]ection 170.6 challenge to a judge must be filed within 10 days for criminal cases, or within 15 days for civil cases, after notice of the judge's all-purpose assignment.' " (*Reagan*, *supra*, 54 Cal.App.5th at p. 772; see § 170.6(a)(2); *Bontilao*, *supra*, 37 Cal.App.5th at p. 991 [holding the 10-day criminal deadline applies to habeas

---

7     There are additional exceptions to the general timing rule, but neither party contends they apply here. (See *Lavi*, *supra*, 4 Cal.4th at p. 1171 [discussing "the '10-day/5-day' rule" and "the 'master calendar' rule"].)

corpus proceedings].)  These deadlines are extended by five days if, as occurred here, notice of the assignment is served by mail.  (See *Bontilao*, at p. 998; § 1013.)

Alternatively, section 170.6(a)(2) extends the deadline to 60 days "following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."  (§ 170.6 (a)(2).) This exception was not in the original version of section 170.6, but was added in 1985 " 'to address the "concern . . . that a judge who had been reversed might prove to be biased against the party who successfully appealed the judge's erroneous ruling at the original trial." ' "  (*Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 556.)  Section 170.6 does not define the terms "reversal on appeal" or "new trial."

### 2.  Habeas Corpus

A petitioner seeking to collaterally attack his or her conviction or sentence through a habeas corpus proceeding begins by filing a verified petition in the superior court that entered the underlying judgment.  (*Maas*, *supra*, 1 Cal.5th at pp. 973-974; *Robinson v. Lewis* (2020) 9 Cal.5th 883, 895 (*Robinson*).)

The court first " 'determine[s] whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred.' "  (*Maas*, *supra*, 1 Cal.5th at p. 974.)  If "the petition fails to state a prima facie case for relief or . . . the claims are procedurally barred, the petition will be summarily denied . . . ."  (*Ibid.*)  If, however, "the petition states a prima facie case for relief on a claim that is not procedurally defective, the court issues the writ of habeas corpus, or an order to show

10

cause," which "requires the petitioner's custodian to . . . respond[ ] . . . and justify[ ] the restraint on the petitioner's liberty." (*Ibid.*)

"[I]n noncapital cases, if the superior court denies a petition for a writ of habeas corpus, the petitioner has no statutory right to appeal. Instead, the petitioner must file a new, original petition, generally in the Court of Appeal." (*Robinson*, *supra*, 9 Cal.5th at p. 895.) "[A] petition in the Court of Appeal is a *new* petition invoking that court's original jurisdiction." (*Id.* at pp. 895-896.) "[A] Court of Appeal that considers a new petition does not directly review the superior court's ruling but makes its own ruling." (*Id.* at p. 896.)

If the Court of Appeal denies the petition, the petitioner has two options: file a petition for discretionary review in the Supreme Court, or file "a new, original petition for a writ of habeas corpus in [the Supreme Court] invoking [that] court's original jurisdiction." (*Robinson*, *supra*, 9 Cal.5th at p. 896.) In the first scenario, the Supreme Court "review[s] the Court of Appeal's rulings on the claims presented in the previous petition." (*Ibid.*) In the second scenario, the Supreme Court "do[es] not directly review the lower courts' rulings." (*Ibid.*) "Far more petitioners file an original petition . . . than file a petition for review . . . ." (*Ibid.*)

An appellate court may issue an order to show cause returnable before the superior court. (*In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 (*Hochberg*); Cal. Rules of Court, rule 8.385(e).)[8] "The order vests jurisdiction over the cause in the superior court . . . ." (Rule 8.385(e); see *Hochberg*, at p. 875, fn. 4.)

---

[8] All further rule references are to the California Rules of Court.

11

### B.  **The 60-day Deadline Following Reversal on Appeal to Conduct a New Trial Does Not Apply Here**

Section 170.6(a)(2)'s 60-day deadline applies when (1) there has been a "reversal on appeal," and (2) the case has been assigned to the original "trial judge . . . to conduct a new trial on the matter."  Assuming without deciding that the Supreme Court's issuance of the OSC returnable before the superior court constituted a reversal on appeal, we conclude the ensuing habeas corpus proceeding does not satisfy the additional condition that the reversal be for the purpose of "conduct[ing] *a new trial* on the matter."  (§ 170.6(a)(2), italics added.)

"Section 170.6 does not define the term 'new trial.' "  (*Andrew M. v. Superior Court* (2020) 43 Cal.App.5th 1116, 1124 (*Andrew M.*).)  Thus, courts construing section 170.6(a)(2) have looked to other statutory definitions of the term.  (See *Peracchi*, *supra*, 30 Cal.4th at pp. 1253, 1259-1262.)  Notably, the definition of the term "new trial" varies significantly depending on whether the case is civil or criminal.  (See *ibid.*)  Because a habeas corpus proceeding is "not entirely analogous to either category" (*Scott*, *supra*, 29 Cal.4th at p. 815), we must determine the category to which it is most analogous.[9]

As we will explain, we conclude a habeas corpus proceeding that raises only a claim of ineffective assistance of counsel at sentencing, and which

---

[9]   In *Scott*, *supra*, 29 Cal.4th 783, the court held that "a habeas corpus proceeding . . . is civil in nature for . . . purposes" of the rule precluding calling a criminal defendant as a trial witness.  (*Scott*, at p. 815.)  However, the *Scott* court clarified the limited scope of its holding:  "We need not, and do not, decide whether a habeas corpus proceeding is civil or criminal *for other purposes*.  [Citation.]  *It is a special proceeding and not entirely analogous to either category*."  (*Scott*, at p. 815, fn. 6, italics added.)  *Scott* did not address section 170.6.

seeks as its only remedy a resentencing hearing, is more analogous to a criminal case.

## 1. The Meaning of "New Trial"

Our Supreme Court in *Peracchi, supra*, 30 Cal.4th 1245 addressed at length the meaning of the term "new trial" for purposes of section 170.6. Although *Peracchi* involved a direct appeal rather than a habeas corpus proceeding, we find the court's discussion instructive.

The defendant in *Peracchi* appealed his convictions for reckless evasion and being a felon in possession of a firearm. (*Peracchi, supra*, 30 Cal.4th at p. 1249.) The Court of Appeal reversed the reckless evasion conviction, affirmed the firearm conviction, and "remanded for retrial on [the reckless evasion] count, if the prosecutor so elects, and for resentencing." (*Id.* at p. 1250.) When the case was assigned on remand to the judge who had presided over the trial, the defendant sought to disqualify him under section 170.6. (*Ibid.*) The judge "announced that if the prosecution determined that the reversed count should be retried, the challenge would be granted. If, on the other hand, the prosecution determined not to retry the reversed count and the matter merely required a new sentencing hearing, the challenge would be denied." (*Ibid.*) After the prosecutor declined to seek a new trial on the reversed count, the judge set the matter for resentencing and denied the peremptory challenge. (*Ibid.*)

The defendant filed a petition for a writ of mandate in the Court of Appeal seeking to disqualify the judge. (*Peracchi, supra*, 30 Cal.4th at p. 1250.) A divided Court of Appeal granted the requested relief, "rel[ying] in great part" on the "broad meaning" ascribed "to the term 'new trial' in the context of *civil* trials." (*Ibid.*; see § 656 ["A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or

13

referee."].)  The court adopted a " 'case-by-case analysis' " that " 'focus[ed] on the function the judicial officer is to perform upon remand, rather than simply the nature of the hearing at issue.' " (*Peracchi*, at pp. 1250-1251.) The majority concluded that because "the trial judge would have significant discretion at the resentencing hearing and would have an opportunity to 'rehear evidence . . . and . . . exercise his discretion' . . . , '[t]he policy behind section 170.6, to avoid possible bias by a trial judge who has been reversed on appeal, will best be served by interpreting "new trial" to encompass this resentencing.' " (*Peracchi*, at p. 1251.)  One justice dissented, reasoning that because the term "new trial" "has a more restrictive meaning in the criminal context than in the civil context," it does not extend to a resentencing hearing.  (*Ibid.*)

The Supreme Court disagreed with the majority's reasoning, and reversed.  In contrast to the "quite broad[ ]" definition of "new trial" applicable in civil cases, the *Peracchi* court noted that the Penal Code defines the term more narrowly in criminal cases:

> "The Penal Code defines a new trial as 'a reexamination of the issue in the same Court, before another jury, after a verdict has been given.' (Pen. Code, § 1179.)  Penal Code section 1180 explains that '[t]he granting of a new trial places the parties in the same position as if no trial had been had.  All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument . . . .' " (*Peracchi, supra,* 30 Cal.4th at p. 1253.)

With these narrow definitions in mind, the *Peracchi* court concluded a resentencing hearing does not constitute a new trial for purposes of section 170.6.  (*Peracchi*, at pp. 1254-1263; see *ibid.* at p. 1261 ["[W]e do not believe that the Legislature contemplated that what constitutes a new trial in a criminal case for the purposes of section 170.6 would be defined by the law in

14

civil cases—especially when a specific Penal Code section defines the term 'new trial.' "].)

First, the *Peracchi* court observed that because of the nature of a trial "court's function at sentencing," a resentencing hearing cannot place the parties in the same position " 'as if no trial had been had.' " (*Peracchi*, *supra*, 30 Cal.4th at p. 1254, quoting Pen. Code, § 1180.) To the contrary, the sentencing court "resol[ves] . . . certain factual issues that relate to the choice of appropriate sentence . . . *in light of what occurred at trial*, including [the court]'s own impressions of matters such as the defendant's demeanor and conduct at trial." (*Peracchi*, at p. 1254, italics added.) Moreover, based on "the significance of the trial record and the court's observations at trial," and to preserve "scarce judicial resources," "the usual procedure is for . . . the trial judge to preside at the sentencing hearing" and any resentencing on remand. (*Ibid.*) Because the trial judge's function and role at resentencing properly involve factfinding and exercising discretion, the Supreme Court rejected the Court of Appeal's conclusion that the determination of whether a resentencing hearing constitutes a new trial "hinge[s] upon a case-by-case analysis of the level of discretion to be exercised by the judge and the degree of factfinding in which the judge will be engaged." (*Id.* at p. 1260.)

Second, the court noted that, "[a]s a matter of practice, when a reviewing court identifies error relating solely to sentencing, it ordinarily does *not* reverse the judgment of conviction or remand for a new trial. Rather, typically, it simply remands for resentencing." (*Peracchi*, *supra*, 30 Cal.4th at p. 1255.) "Such a routine order remanding for resentencing does not necessarily operate even to vacate the original sentence, let alone constitute an order for a new trial—that is, a proceeding at which 'the parties [are] in the same position as if no trial had been had' and in which '[a]ll the

15

testimony must be produced anew.' (Pen. Code, § 1180.)" (*Peracchi*, at p. 1255.)

Third, the *Peracchi* court observed that a criminal defendant's constitutional trial rights are not implicated in a noncapital resentencing hearing. (*Peracchi*, *supra*, 30 Cal.4th at p. 1256.)

In light of these considerations, the *Peracchi* court found "no indication that . . . the Legislature . . . intended that a sentencing hearing on remand be considered a new trial" under section 170.6. (*Peracchi*, *supra*, 30 Cal.4th at p. 1256.) The court also "deem[ed] it improbable . . . that the Legislature intended to disturb . . . reviewing courts' practice of remanding cases for resentencing on the assumption that the trial judge would again preside— and would conduct the resentencing without bias." (*Peracchi*, at p. 1256.)

Thus, "[t]aking into consideration the applicable statutes, prior court practice, the function of a sentencing hearing, and the limited effect on the judgment of a reviewing court's order remanding for resentencing," the *Peracchi* court "concluded that resentencing is not a 'new trial' within the meaning of the Penal Code or Code of Civil Procedure section 170.6." (*Peracchi*, *supra*, 30 Cal.4th at pp. 1257-1258.)

### 2. Cases Addressing the Interplay Between Section 170.6 and Habeas Corpus

No court has yet addressed the precise issue before us, but some have addressed more generally the interplay between section 170.6 and habeas corpus proceedings.

In *Maas*, *supra*, 1 Cal.5th 962, the Supreme Court addressed whether section 170.6 allows a habeas corpus petitioner to peremptorily challenge the judge assigned to determine whether the petition states a prima facie case for relief. (*Maas*, at p. 975.) The question arose because section 170.6 does not

16

expressly mention habeas corpus proceedings. Rather, section 170.6(a)(1), the statute's disqualification provision, states that it applies only to "a civil or criminal action or special proceeding." From these choices, the *Maas* court ultimately concluded habeas corpus petitions fall within the "special proceeding" category. (*Maas*, at p. 975.)

In reaching this conclusion, the *Maas* court reasoned that if a habeas corpus proceeding falls within any of the three statutory categories of proceedings, it is either a criminal action or a special proceeding—the court did not contemplate that it might constitute a civil action. (*Maas*, *supra*, 1 Cal.5th at p. 975.) The court ruled out the criminal action category because a "habeas corpus proceeding is . . . an independent, collateral challenge to an earlier, completed criminal prosecution." (*Ibid*.)

Instead, the *Maas* court found that habeas corpus proceedings fall within section 170.6's special proceeding category because California Supreme Court "decisions have long characterized a habeas corpus proceeding as a special proceeding," and, "[a]lthough not dispositive, the Legislature likewise has labeled the habeas corpus proceeding a '*Special Proceeding*[ ] of a Criminal Nature' " in the Penal Code. (*Maas*, *supra*, 1 Cal.5th at p. 975, italics added.)

In *Bontilao*, *supra*, 37 Cal.App.5th 980, the Court of Appeal considered which of section 170.6(a)(2)'s deadlines for all purpose assignments—the 10-day deadline for criminal cases, or the 15-day deadline for civil cases—applies to a habeas corpus proceeding challenging a parole denial decision. (*Bontilao*, at p. 998.) The court noted that section 170.6(a)(2) "does not mention habeas corpus proceedings or, for that matter, any writ or postconviction relief petitions." (*Bontilao*, at p. 990.)

17

Finding no pertinent legislative history, the *Bontilao* court thus "appl[ied] the catchall provision of section 170.6[(a)(2)], which states '[i]n the case of trials or hearings not specifically provided for in this paragraph, the procedure specified herein shall be followed *as nearly as possible*.' " (*Bontilao, supra,* 37 Cal.App.5th at p. 999, italics added.)  Using this approach, the court "conclude[d] a criminal case rather than a civil case provides the closest analogy to [a] petition challenging the . . . decision denying . . . parole." (*Ibid.*)  The *Bontilao* court relied on the fact that habeas corpus proceedings are implemented through the *Penal* Code, and that habeas corpus challenges to parole denial decisions "relate[ ] to the prisoner's criminal sentence," which "is clearly part of a criminal case." (*Bontilao,* at p. 999.)

More recently, the court in *Reagan, supra,* 54 Cal.App.5th 766 "follow[ed] *Bontilao* and appl[ied] the all purpose assignment timeliness rule for criminal cases" to a habeas corpus proceeding.  (*Reagan,* at p. 774, fn. 3.)

C. **Analysis**

In light of the principles addressed in *Maas, Bontilao, Reagan,* and *Peracchi,* we conclude that because the OSC relates only to a single claim of ineffective assistance of counsel at sentencing, which will at most result only in a new sentencing hearing, it does not constitute a new trial for purposes of section 170.6(a)(2)'s 60-day deadline.

At a general level, we are persuaded by the fact the *Maas* court contemplated that a habeas corpus proceeding would fall within section 170.6 only if it constituted a criminal action or a special proceeding, but not a civil action. (*Maas, supra,* 1 Cal.5th at pp. 975-976.)  Additionally, as the *Maas* court observed, the Legislature labeled habeas corpus proceedings in the *Penal* Code as " 'Special Proceedings of a Criminal Nature.' " (*Maas,* at

18

p. 975.) Although the *Maas* court focused on the *special proceedings* portion of the label (*ibid.*), we find the *criminal nature* portion informative.

More specifically, we are persuaded that the scope of Mendoza's habeas corpus claim is more appropriately categorized as criminal than civil. First, the claim arises from what occurred—or, rather, what Mendoza contends *should have occurred*—at her original sentencing hearing. (See *Bontilao*, *supra*, 37 Cal.App.5th at p. 999 ["A criminal sentence is clearly part of a criminal case."].)

Second, Mendoza's habeas corpus claim is premised on ineffective assistance of counsel. This concept applies in criminal, but not civil, cases. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1574 ["[i]neffective assistance of counsel has no place" in a civil marital dissolution case]; *Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978-979 ["the right to counsel constitutional provisions refer specifically to criminal prosecutions, and hence do not apply to civil proceedings"].)

Moreover, to establish the prejudice prong of her ineffective assistance claim in the habeas corpus proceeding, Mendoza will have to show it is reasonably probable she would have obtained a more favorable outcome at the sentencing hearing had her sentencing counsel rendered competent assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) This will require the court to undertake an analysis substantially similar to that which would occur at a sentencing or resentencing hearing, which the *Peracchi* court held is not a new trial. (*Peracchi*, *supra*, 30 Cal.4th at pp. 1257-1258.)

Finally, and relatedly, if Mendoza prevails in her habeas corpus proceeding, she will obtain, at most, a resentencing hearing, which, again, does not constitute a new trial. (*Peracchi*, *supra*, 30 Cal.4th at pp. 1257-1258.)

19

We recognize that the Supreme Court's OSC does not, itself, call for a resentencing hearing. Rather, it calls only for a hearing to determine whether Mendoza is entitled to a resentencing hearing. Yet, courts applying *Peracchi* have held that similarly conditional hearings do not constitute a "new trial" under section 170.6(a)(2).

For example, in *Akopyan v. Superior Court* (2020) 53 Cal.App.5th 1094, the Court of Appeal applied the reasoning in *Peracchi* to conclude that "[a] limited remand to conduct a *Batson/Wheeler* inquiry after trial does not constitute a 'new trial' under section 170.6, subdivision (a)(2)" (*Akopyan*, at p. 1099), even though "the trial court's resolution of that inquiry *may result in . . . a new trial*" (*id.* at p. 1103, italics added). The court reasoned that, "unless and until the trial court decides to grant the *Batson/Wheeler* motion (or decide[s] it is unable to decide the motion) and orders a new trial, [the petitioner]'s section 170.6 challenge is premature and should not be granted." (*Ibid.*)

Similarly, the court in *Andrew M.*, *supra*, 43 Cal.App.5th 1116 applied the reasoning in *Peracchi* to conclude the conditional reversal of a juvenile defendant's convictions in adult criminal court and remand for a transfer hearing in juvenile court under Proposition 57 to determine whether the juvenile court would have transferred the defendant to adult criminal court did not constitute a new trial for purposes of section 170.6. (*Andrew M.*, at pp. 1120-1121, 1125-1127.) If the juvenile court determined it would have transferred the case, the convictions would be reinstated; if not, the criminal convictions would be treated as juvenile adjudications and the court would impose an appropriate juvenile disposition. (*Id.* at pp. 1123-1124.)

The *Andrew M.* court concluded the conditional reversal and remand for a transfer hearing was not a new trial because "[t]here is no ' "do over" '

20

on the issues decided by the verdict." (*Andrew M.*, *supra*, 43 Cal.App.5th at p. 1126.) That is, even though the juvenile court would "exercise discretion" (*id.* at p. 1127), "make factual findings" (*ibid.*), and "consider factors similar to those at issue when the court" sentenced the defendant (*ibid.*), the conditional reversal and remand did not constitute a "new trial" because the parties were " 'not . . . in the same position as if there had been no trial' " and they will not " 'proffer new evidence on the issues decided by the verdict' " (*id.* at p. 1126, quoting *Peracchi*, *supra*, 30 Cal.4th at p. 1257).

As with the proceedings in *Peracchi*, *Akopyan*, and *Andrew M.*, the hearing on Mendoza's habeas corpus petition is not a "new trial" for purposes of section 170.6(a)(2) because nothing that happens at that hearing will put Mendoza "in the same position as if there had been no trial," nor will she "proffer new evidence on the issues decided by the verdict." (*Peracchi*, *supra*, 30 Cal.4th at p. 1257.) At most, the proceeding will result in a resentencing hearing, which is not a new trial. (*Ibid.*)

Accordingly, we conclude section 170.6(a)(2)'s 60-day deadline for reversals on appeal to conduct a new trial does not apply.

### D. **Mendoza's Challenge Was Untimely Under the Applicable All Purpose Assignment Rule**

We instead conclude Mendoza's peremptory challenge is governed by section 170.6(a)(2)'s 10-day all purpose assignment rule. Using even the latest possible triggering date, and extending the deadline by five days for service of the notice of assignment by mail, we further conclude Mendoza's challenge was untimely.

"[F]or a case assignment to be an all purpose assignment, two prerequisites must be met. First, the method of assigning cases must 'instantly pinpoint' the judge whom the parties can expect to ultimately preside at trial. Second, that same judge must be expected to process the

21

case 'in its totality' [citation], from the time of the assignment, thereby 'acquiring an expertise regarding the factual and legal issues involved, which will accelerate the legal process.' " (*Lavi*, *supra*, 4 Cal.4th at p. 1180; see *Reagan*, *supra*, 54 Cal.App.5th at p. 773; *Bontilao*, *supra*, 37 Cal.App.5th at p. 991.)

Judge So's December 4, 2020 order set forth a briefing schedule to be filed with "this court," and advised that "[t]his Court will not rule on the Order to Show Cause until all briefing is complete . . . ." In light of Judge So's prior involvement with Mendoza's habeas corpus petition, this order bearing his signature sufficiently pinpointed him as the judge who would preside over the proceeding for all purposes. (See *Reagan*, *supra*, 54 Cal.App.5th at pp. 769-770, 773 [assigned judge's "in-chambers order (with no parties [present])" setting a briefing schedule "instantly pinpointed him as the assigned judicial officer"]; rule 4.552(c) ["A petition for writ of habeas corpus filed in the superior court must be decided by a single judge . . . ."].) Accordingly, Mendoza's peremptory challenge was governed by section 170.6(a)(2)'s 10-day all purpose assignment rule. (*Bontilao*, *supra*, 37 Cal.App.5th at pp. 998-1000; *Reagan*, at p. 774.)

Because the superior court served the order by mail on December 8, 2020, Mendoza's deadline for filing a peremptory challenge was extended by five days, to December 23, 2020. (*Bontilao*, *supra*, 37 Cal.App.5th at pp. 998-999; § 1013.) She did not file her challenge, however, until January 25, 2021, more than one month late. Thus, Judge Eyherabide properly denied the challenge as untimely.

Mendoza argues that although the December 4, 2020 order purported to appoint OAC to represent her, and although OAC assigned the case to attorney Comeau on December 28, 2020, the clock should not have begun to

run on the deadline for filing a peremptory challenge until the court formally appointed Comeau or Comeau formally appeared in the case. (§ 170.6, subd. (a)(2) [peremptory challenge must be filed "within 10 days after notice of the all purpose assignment, *or if the party has not yet appeared in the action, then within 10 days after the appearance*," (italics added)].) Mendoza has not cited any authority to support the proposition that it is *counsel's* first appearance—rather than the *petitioner's*—that starts the clock running. She has thus forfeited this argument. (*People v. Baker* (2021) 10 Cal.5th 1044, 1112, fn. 11.)

Moreover, the *Reagan* court rejected a substantially similar argument raised by the district attorney in that case. (*Reagan, supra*, 54 Cal.App.5th at pp. 774-775.) The court reasoned that, to "best fit[ ] the realities of habeas corpus practice" (*id.* at p. 775), in which the "proper petitioner and respondent will be well known from the face of the petition (and prior criminal proceedings)" (*id.* at pp. 774-775), "timeliness is to be measured from court-initiated notice of an all purpose assignment and, *only where such notice has not been given*, from ten days after the People's appearance" (*id.* at p. 775).

Mendoza does not claim she did not receive actual notice of the court's order. And because the superior court's proof of service indicates the court served the order by mail on Mendoza, and on Comeau at the address listed on her briefing in this matter, such a claim would be dubious.

Instead, Mendoza argues Judge So's order was a "nullity" because he issued it before the Supreme Court's OSC became final and, thus, Judge So lacked jurisdiction to file any orders. In support, Mendoza cites the general rule that a Supreme Court decision is not final until 30 days after filing. (Rule 8.532(b)(1).) However, rule 8.385(e) provides that if the Supreme Court

issues an OSC returnable before the superior court, as occurred here, "[t]*he order vests jurisdiction* over the cause in the superior court . . . ." (Italics added.)

Finally, even using the date the Supreme Court's OSC became final, Mendoza's peremptory challenge would still have been more than two weeks late. That is, the OSC became final on December 24, 2020 (i.e., 30 days after the court issued the OSC on November 24, 2020), and Mendoza's challenge would thus have been due January 8, 2021 (the 10-day all purpose assignment period, plus five days for service by mail). She did not file her challenge, however, until January 25—17 days after that deadline had passed.

Accordingly, Mendoza's peremptory challenge was untimely under the applicable all purpose assignment deadline.

## DISPOSITION

The petition is denied. The stay of proceedings issued by this court on February 22, 2021 is vacated.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.

24